NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1756

_____

DR. CHRISTINE LENTZ;
LYNN PETROZZA,

                    Appellants

v.

DR. KATHLEEN TAYLOR, individually and as Superintendent of
Ocean City Public School District; OCEAN CITY SCHOOL BOARD,
as the Governing Body for the Ocean City School District;
COMEGNO LAW GROUP, P.C.; JEFFREY R. CACCESE, ESQ.;
MARK G. TOSCANO, ESQ.; DFDR CONSULTING, LLC; JOHN DOE

_____

On Appeal from the United States District Court
for the District Court for the District of New Jersey
(District Court No. 1-17-cv-04515)
U.S. District Judge: Robert B. Kugler

_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 5, 2021

_____

Before: SHWARTZ, RESTREPO, and SCIRICA, *Circuit Judges.*

(Filed:  November 4, 2021)

## OPINION[*]

RESTREPO, *Circuit Judge*.

Appellant Lentz appeals the District Court's dismissal of various violations of 42 U.S.C. § 1983 pursuant to Fed. R. Civ. P. 12 (b)(6). Arising out of an alleged conspiracy to remove Appellant from her position within the public school district and levy criminal charges against her, Lentz filed an action in the United States District Court for the District of New Jersey alleging, *inter alia*, violations of her civil rights under 42 U.S.C. § 1983 for (1) substantive due process; (2) procedural due process; and (3) unlawful seizure under the Fourth Amendment.[1] Pursuant to Rule 12 (b)(6), the District Court dismissed claims in the Amended Complaint against three groups of defendants: (1) lawyers Toscano, Caccese, and the Comegno Law Group, P.C. ("Comegno Defendant-Appellees"); (2) DFDR Consulting, the company hired to investigate the improper access of Superintendent Taylor's email ("DFDR Defendant-Appellees"); and (3) Superintendent Taylor and the School Board ("City Defendant-Appellees"). For the reasons that follow, we will affirm.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Plaintiff also raised other causes of action under state law, over which the District Court declined to exercise supplemental jurisdiction after dismissing the federal claims.

# I. BACKGROUND[2]

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows. For more than twenty years, Appellant Lentz worked in various teaching and administrative roles in the Ocean City School District ("School District"). Her employment included a Collective Bargaining Agreement ("CBA") with the Ocean City Administrators' Association ("OCAA"). During that time, Appellant had ongoing interactions with the Superintendent, the School Board, and its attorneys relating to her position within the School District and collective bargaining negotiations.

Over the course of her employment, Appellant alleged continued hostility and animus relating to her employment within the School District. For example, Appellant experienced various personal and professional issues with Superintendent Taylor, whom she alleged interfered with Appellant's appointment to a school board and denied health benefits to Appellant and her same-sex partner and co-Appellant, Lynn Petrozza. During her time as Chair of the OCAA's negotiation committee, Appellant claims the Comegno Defendant-Appellees leaked confidential information to initiate a false investigation against her. Due to the leak, the Comegno Defendant-Appellees hired DFDR Consulting to conduct an internal investigation of Appellant's alleged unlawful access of Superintendent Taylor's email. As a result of the investigation, Appellant received a

---

[2] Because Lentz appeals an order granting a Rule 12(b)(6) motion to dismiss, we draw the facts from nonconclusory allegations in the Amended Complaint. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

formal letter notifying her that she was charged with unauthorized access of Superintendent Taylor's email. The letter also notified Appellant of her suspension and hearing.

Following her formal suspension, the Cape May County Prosecutor filed criminal charges against Appellant for the unauthorized access of Superintendent Taylor's email. The criminal charges included second degree official misconduct, third degree theft, and third degree computer-related theft. Appellant cooperated with law enforcement by turning herself into the prosecutor to be photographed and processed. She appeared in court initially and was released on her own recognizance but was required to appear at all future court proceedings, including weeks of hearings and motions as well as several days of trial before her acquittal.

Following her acquittal, Appellant filed suit against the Defendant-Appellees. Defendant-Appellees moved to dismiss the Amended Complaint, arguing that the Comegno Defendant-Appellees and DFDR Defendant-Appellees are not state actors under Section 1983. Additionally, the City Defendant-Appellees argued that Appellant's substantive and procedural due process claims failed as a matter of law, as Appellant has not suffered any constitutional violations. Appellant timely appealed the District Court's dismissal of the Amended Complaint, which we now review *de novo.*

## II. DISCUSSION[3]

Appellant asserted claims against all Defendant-Appellees under Section 1983, which "subjects to liability those who deprive persons of federal constitutional or statutory

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a District Court's grant of a

rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). To determine whether a party qualifies as a state actor, we examine the "nexus between the State and the challenged action," (quoting *Leshko*, 423 F.3d at 339) and apply three broad tests to determine whether state action exists:

> (1) [W]hether the private entity has exercised powers that are traditionally the exclusive prerogative or the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (internal citations and quotation marks omitted)).

Liability under Section 1983 is not appropriate if qualified immunity is applicable. "Qualified immunity is intended to shield government officials . . . 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

motion to dismiss is plenary. *N.Y. Shipping Ass'n Inc. v. Waterfront Comm'n of N.Y. Harbor*, 835 F.3d 344, 352 (3d Cir. 2016). On review, we apply the same standard as the District Court. *Id.* To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A. Claims against Comegno and DFDR Defendant-Appellees**

Appellant claims that both Comegno and DFDR Defendant-Appellees qualify as state actors for Section 1983 under two theories: (1) they engaged in state action by providing false information to the prosecutor and (2) they engaged in a conspiracy to violate her constitutional rights. The District Court correctly found that neither the Comegno Defendant-Appellees nor the DFDR Defendant-Appellees qualified as state actors under either theory and we will affirm the dismissal.

Under the first theory, Appellant claims both Comegno and DFDR Defendant-Appellees qualify as state actors due to occupying a role traditionally reserved by the state. With respect to the Comegno Defendant-Appellees, Appellant argued that they engaged in state action by serving as counsel for the School Board. The Supreme Court has held that lawyers are not state actors "under color of state law" within the meaning of Section 1983 simply because they are "officers of the Court." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981); *see also Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980). The District Court found Appellant's "argument asserting that Comegno Defendants are state actors is unsupported and thus, fails." App. 12. We agree and will affirm.

The District Court also dismissed Appellant's claim as conclusory that DFDR Defendant-Appellee qualified as a state actor for Section 1983 simply because they engaged in information gathering and dissemination of allegedly false statements. We agree. *See, e.g.*, *Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 710 (3d Cir. 1993) (explaining that state contractors are not state actors "simply because they are carrying out a state sponsored program and the contractor is being compensated therefor by the state").

6

Under Appellant's second theory, private actors may qualify as state actors if they engage in a conspiracy. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A sufficient pleading will therefore provide "enough factual matter (taken as true) to suggest than an agreement was made." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (internal quotations omitted)). According to Appellant, both Comegno and DFDR Defendant-Appellees colluded by providing false and incomplete information about her to the Cape May County Prosecutor. Rather, the Amended Complaint primarily focuses on the conduct of Toscano, a private attorney who allegedly fabricated the leak, and then hired private actor DFDR and "directed the search performed by DFDR," App. 176. These allegations therefore focus on the relationship between Toscano and DFDR, neither of which are state actors. The District Court correctly dismissed Plaintiff-Appellant's claims, noting that Lentz failed to plausibly allege that either Defendant-Appellee engaged in a conspiracy with a state actor,[4] and thus, did not establish that either qualified as a state actor under a joint participant theory.

---

[4] The District Court correctly concluded that "the Amended Complaint does not plausibly allege the elements of a conspiracy" and "[t]hus, [Appellant's] second argument asserting that DFDR is a state actor fails." App. 11.

7

**B. Claims Against City Defendant-Appellees**

Appellant also claimed that Superintendent Taylor and the School Board, the City Defendant-Appellees, violated her substantive and procedural due process rights, as well as her Fourth Amendment rights.

1. Substantive Due Process Claim

To prevail on a substantive due process claim, "a plaintiff must establish as a threshold matter that [s]he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (internal citation omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of it. [Sh]e must, instead, have a legitimate claim of entitlement to it." *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)).

We have previously and unequivocally held that tenured public employment, for which Appellant seeks due process relief, is not a protected property interest entitled to substantive due process protection. *See Nicholas*, 227 F.3d at 142. We will therefore affirm the District Court's dismissal of this claim with prejudice.

2. Procedural Due Process Claim

Appellant alleged two types of procedural due process violations against the City Defendant-Appellees. First, she alleged a violation of her right to adequate notice and an opportunity to be heard surrounding her suspension. Second, she alleged a violation of her

8

right to a jury trial after Defendant-Appellees fabricated, suppressed, and destroyed exculpatory evidence.

"The adequacy of any hearing must be evaluated in reference to the 'two essential requirements of due process, . . . notice and an opportunity to respond.'" *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985)). We have held that notice is sufficient "1) if it apprises the vulnerable party of the nature of the charges and general evidence against [her], and 2) if it is timely under the particular circumstances of the case." *Id*. In addition to proper notice, a plaintiff must also receive "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221 (3d Cir. 2009) (quoting *Mathews v. Eldrige*, 424 U.S. 319, 333 (1976)).

The District Court dismissed Appellant's claim, finding that the School Board provided her sufficient notice[5] and opportunity[6] to be heard. We agree and find that the notice and opportunity provided to Appellant satisfied due process requirements.

To state a successful Section 1983 claim for knowingly falsified evidence, a plaintiff must show a "reasonable likelihood that, absent that fabricated evidence, [she] would not

---

[5] "For example, the June 24, 2015 letter provided her with the pending hearing and allegations. Am. Compl. ¶ 113. As such, it 'notif[ied] her that she was charged with the unauthorized access of Taylor's email . . . and was therefore suspended.' *Id.* The letter further indicated a hearing would occur on June 26, 2015, and that she would be accompanied by counsel. *Id.*" App. 22.

[6] "The facts alleged within the Complaint further show that Plaintiff had an opportunity to be heard. For example, she spoke at these hearings and answered questions. She also had the opportunity to make a considered decision before resigning. Taken collectively, the process afforded to her appears wholly consistent [with] the process described by the Supreme Court." App. 23.

have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016). "The 'reasonable likelihood' standard we employ simply requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her." *Id.* (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)). The District Court properly found that Appellant failed to plausibly allege "procedural due process violations stemming from her criminal trial" and further failed "to adduce facts that suggest a 'meaningful connection' between the injury and the fabricated evidence against her." App. 24–25. Therefore, we will affirm.

3. Fourth Amendment Claim

To prove a Fourth Amendment malicious prosecution claim brought under § 1983, a plaintiff must show five elements:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). The fifth element focuses on whether there has been a seizure.

"The Supreme Court in *Terry v. Ohio*, forged a general definition of the meaning of seizure: 'when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Black*, 835 F.3d at 364 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). We recognize that "[a]n actual physical touching is not required to constitute a seizure of a person, but in the absence of a physical touching, there

10

must be a submission to an officer's show of authority." *Black*, 835 at 365 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). We have adopted Justice Ginsburg's idea of the "continuing seizure," as discussed in her concurrence in *Albright v. Oliver*. *See Black*, 835 at 366–67 (discussing *Albright*, 510 U.S. 266, 277 (Ginsburg, J., concurring)). According to Justice Ginsburg, a person facing serious criminal charges—who may be required to appear in court, comply with pre-trial conditions of bail or release, and suffer serious reputational harm due to the seriousness of the charges—may be seized within the meaning of the Fourth Amendment. *See Albright,* 510 U.S. at 278–79.

The Third Circuit has adopted the continuing seizure theory and has further analyzed the parameters of what amounts to a pre-trial seizure. We continue to apply a totality of the circumstances test, weighing various factors to determine whether an individual's liberty was intentionally restrained within the scope of a Fourth Amendment seizure. *See, e.g.*, *Black*, 835 at 367–68 (holding that Black was seized after being fingerprinted and photographed, posting unsecured bail, traveling for court appearances, and suffering serious reputational harm); *Schneyder v. Smith*, 653 F.3d 313, 321–22 (3d Cir. 2011) (footnote omitted) ("When the state places constitutionally significant restrictions on a person's freedom of movement for the purposes of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment."); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) ("Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure."); *Gallo v. City of Phila.*, 161 F.3d 217, 222, 225 (3d Cir. 1998) (holding that the "combination of restrictions imposed upon Gallo," including a

$10,000 bond, weekly pre-trial services meetings, mandatory court appearances over an eight and a half month period, amounted to a Fourth Amendment seizure).

The District Court considered the factors surrounding Appellant's arrest and pre-trial restrictions to correctly determine Lentz was not seized within the meaning of the Fourth Amendment. Unlike the Appellants in *Black* or *Gallo*, Lentz did not experience any significant pretrial restrictions such as extensive travel or onerous bail requirements. *See Black*, 835 F.3d at 367 (noting that "merely attending trial does not amount to a seizure for Fourth Amendment purposes"). Under a totality of the circumstances approach, Lentz fails to plausibly plead facts to establish she was seized within the meaning of the Fourth Amendment.

Therefore, we will affirm the dismissal of Appellant's Fourth Amendment claim, as well.

### III. CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court on all counts.